**UNITED STATES of America**

v.

**Willie DeCOSTER, Jr., Appellant.**

**No. 72–1283.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1973.

Decided Oct. 4, 1973.

Rehearing Denied Dec. 27, 1973.

MacKinnon, Circuit Judge, concurred in part and dissented in part and filed opinion.

Calvin Davison, Washington, D.C. (appointed by this Court), for appellant.

Richard S. Vermeire, Asst. U.S. Atty., with whom Harold H. Titus, Jr., U.S. Atty., John A. Terry, Asst. U.S. Atty., and Philip L. Cohan, Asst. U.S. Atty. at

the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

██ The only serious issue in this case is whether appellant was denied his constitutionally guaranteed right to the effective assistance of counsel.[1]

## I

The facts are relatively simple. The victim testified that he was accosted by appellant and two accomplices in a parking lot at about 6 p.m. He stated that one of the accomplices held him from behind, while the other stood in front of him with a knife and appellant went through his pockets. The robbers took a wallet containing $110, then fled when the police arrived.

Two policemen testified that they were cruising in an unmarked car when they saw the robbery in progress. The officers alighted from their vehicle and gave chase. One officer followed and arrested a man identified as Eley, and found a straight razor in his pocket. The second policeman and the victim chased appellant and his other cohort. When this pair of robbers split up, the policeman continued after appellant. The officer's quarry ran into a nearby hotel and the policeman followed; he found appellant standing at the desk in the lobby and arrested him. The victim immediately identified appellant as one of the robbers. A search of appellant turned up neither the stolen wallet nor

any weapons. And neither officer had seen any weapon in use during the robbery.

Between the time of the offense and the time of trial, the victim was in a serious automobile accident, which caused lapses in his memory and damage to his eyesight. At trial, he was unable to identify either appellant or the straight razor taken from Eley.

Appellant testified that on the afternoon of the crime he met the victim for the first time at a bar near the parking lot where the robbery was alleged to have occurred. At around 6 p.m., after having a few drinks with the victim, appellant claims to have returned to his hotel, where he was arrested while trying to obtain his key from the desk. The victim was unsure whether he had met appellant before the robbery. The accomplice, Eley, testified that on the day of the robbery he saw appellant and the victim drinking together at the bar and, later, fighting in a nearby parking lot when the police arrived.

██ DeCoster was convicted by a jury of aiding and abetting in an armed robbery and an assault with a dnagerous weapon.[2] He was sentenced to 2–8 years on each count, to be served concurrently.

## II

Several events and circumstances suggest that appellant may have been denied his sixth amendment right to the effective assistance of counsel:

1) Although appellant, who failed to meet bail, was accepted for pretrial custody by Black Man's Development Cen-

---

[1]. Appellant also contends that since his alleged accomplices only pled guilty to robbery he cannot be convicted of aiding and abetting an armed robbery and an assault with a deadly weapon. This seeming paradox—an aider and abetter without a principal—is but a necessary result of the irrationality of plea bargaining. *See, e. g.*, Cross v. United States, 122 U.S.App.D.C. 380, 354 F.2d 512 (1965) ; *cf.* Bazelon, New Gods for Old: "Efficient" Courts in a Democratic Society, 46 N.Y.U.L. Rev. 653, 663–68 (1971).

We also find that there was sufficient evidence for a jury to conclude that a weapon was used in the alleged robbery.

[2]. A charge of assault with a dangerous weapon is a lesser included offense to a charge of armed robbery arising from the same act or transaction. United States v. Johnson, 156 U.S. App.D.C. 28, 475 F.2d 1297 (1973) ; United States v. Benn, 156 U.S.App.D.C. 180, 476 F.2d 1127, 1132 (1972). Since appellant was convicted on both counts, the assault conviction is vacated.

ter on October 12, counsel did not file a bond review motion until November 9. Even then, the motion did not mention the third party custody arrangement, and was filed in the wrong court. On November 13, DeCoster wrote to the court indicating that counsel had promised he would file a motion for his release. On December 8, counsel filed a motion in the proper court and defendant was released.

2) It appears that defense counsel (who is not counsel on appeal) announced "ready" although he was not prepared to go to trial. As appellant's two day trial was about to begin, the following colloquy regarding the Government's alibi demand notice occurred:

Court: All right, are you ready for trial? If you are can you give the names and addresses [of your alibi witnesses] to the prosecutor? Are you prepared to give the names and addresses?.

Defense: No, at the present time I am not. . . .

Court: Well are you here for trial?

Defense: I am here for trial but if the court pleases, under the statute we have 20 days.[3]

Court: Are you asking for a continuance?

Defense: I would ask for a 4 or 5 day continuance for this trial which might give me an opportunity to give the prosecutor what we can in response to this notice.

Court: Well you did announce ready for trial, . . . and if you are going to rely on an alibi, then you must know the witnesses you are going to use as alibi witnesses. You announced ready.

\* . \* \* \* \* \*

Court: [I]t seems to me that if you have your witnesses ready for trial there seems to be no reason why you

shouldn't be able to give the names of the people you intend to call as alibi witnesses at this time.

Defense: We will proceed without alibi witnesses. We will consider we don't have any alibi witnesses.

Court: You will not rely on an alibi defense?

Defense: That is correct.

3) Counsel apparently made no effort to inquire into the disposition of the cases against appellant's two alleged accomplices. In fact, they had both already pled guilty before the same judge who was to sit on DeCoster's case. Thus, counsel agreed to waive a jury trial totally unaware that his client would, as the court pointed out, "be tried by a judge who has heard a portion of this evidence in connection with the other two defendants." (The Government, however, refused to waive a jury trial.)

4) There are indications of a lack of communication between appellant and his trial counsel. When DeCoster personally requested the court to subpoena his two accomplices, counsel indicated that he had thought of calling them but "we have no address [sic] for them." Appellant immediately responded that one of the men was at the D.C. Jail under sentence for the instant offense. The other man had recently been placed on probation, also for his involvement in the instant offense, by the same judge who was presiding over DeCoster's case. This witness was never called.

Defendant informed the court, first be letter and then at the opening of trial, that he was dissatisfied with his appointed counsel. On the later occasion he pleaded:

Your honor, I feel that this case should be continued because this is, I can't get proper representation that I should be getting.

His request was denied without inquiry into the basis of his claim.[4]

---

3. The 20 days had not yet run by the opening day of trial.

4. An inquiry by the court into the source of defendant's dissatisfaction with his attorney might have been useful to the trial judge

in meeting his responsibility "to maintain proper standards of performance by [defense] attorneys," McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), and thereby avoiding a later claim of ineffectiveness.

5) The defense called only two witnesses: appellant and an alleged accomplice who contradicted appellant on a fundamental point. On direct examination, he placed DeCoster at the scene of the crime engaged in a fight with the victim at a time when DeCoster himself had testified he was at his hotel. This contradiction confused the defense case and stripped it of its credibility.

### III

This court does not sit to second guess strategic and tactical choices made by trial counsel.[5] However, when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel.[6] The present record, as is typical in cases raising a claim of ineffectiveness, poses more questions about counsel's preparation and investigation than it answers. For example, it is unclear whether an informed tactical judgment or a lack of preparation was at the root of counsel's inability to identify any alibi witnesses at the outset of trial, or his decision to call both DeCoster and his accomplice who contradicted him. Accordingly, the record is remanded for a supplemental hearing on counsel's preparation and investigation, and appellant's present counsel is given leave to file a motion for a new trial on remand.[7]

### IV

Since we remand for a determination of appellant's claim, it is necessary to discuss the governing principles. The effective assistance of counsel is a defendant's most fundamental right "for it affects his ability to assert any other right he may have."[8] The Supreme Court has observed, "if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel."[9]

The first major ineffectiveness case in this Circuit was Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14 (1945). Applying a due process-fundamental fairness approach, we held the standard to be whether counsel's incompetence rendered the trial a "farce and a mockery." In Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967), we reconsidered *Jones* and held that the "farce and mockery" language was "not to be taken literally, but rather as a vivid description of the principle that the accused has a heavy burden in showing requisite unfairness." The rule announced in *Bruce* required a defendant to prove:

> both that there has been gross incompetence of counsel and that this has in effect blotted out the essence of a substantial defense . . . 379 F.2d at 116–117.

In *Bruce*, the claim of ineffective assistance arose on collateral attack. In several cases since then, when the ineffectiveness issue was raised on direct appeal, the court has silently ignored the *Bruce* requirement that the defendant has a "heavy burden" to show prejudice, implying that a different test was applicable on direct appeal. United States v.

---

5. *See generally* Moore v. United States, 432 F.2d 730 (3rd Cir. 1970) (*en banc*).

6. *See, e. g.*, United States v. Brown, 156 U.S.App.D.C. 177, 476 F.2d 933 (1973); United States v. Benn, 156 U.S.App.D.C. 180, 476 F.2d 1127, 1135 (1973). *See also* United States ex rel. Kent v. Maroney, 435 F.2d 1020 (3rd Cir. 1970); Caraway v. Beto, 421 F.2d 636 (5th Cir. 1970); United States ex rel. Williams v. Follette, 408 F.2d 658, 660 (2d Cir. 1969), rev'd on other grounds sub nom., McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Unit-

ed States ex rel. Thomas v. Zelker, 332 F.Supp. 595, 600–601 (S.D.N.Y.1971).

7. If the court below finds that a new trial is required, this court should be advised and we will remand the case.

8. Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1, 8 (1956).

9. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). *See also* Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *cf.* Johnson v. Zerbst, 304 U.S. 458, 462–463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Hammonds, 138 U.S.App.D.C. 166, 425 F.2d 597 (1970); Matthews v. United States, 145 U.S.App.D.C. 323, 449 F.2d 985 (1971). Indeed, in *Bruce* itself the court pointed out that "a more powerful showing of inadequacy is necessary to sustain a collateral attack than to warrant an order for a new trial either by the District Court or by this court on direct appeal." 379 F.2d at 117; *accord* Scott v. United States, 138 U.S.App.D.C. 339, 427 F.2d 609 (1970). Since these decisions leave uncertain the correct standard to be applied when the question of ineffectiveness is raised on direct appeal, we now address that issue.

■ In this regard we are mindful that there have been several important developments since *Bruce*. The test there, with its requirement of a "heavy burden" to show "unfairness," appears to rest on the theory that an ineffectiveness claim is grounded in the due process clause.[10] Since then, however, the Supreme Court has implied,[11] and this court has explicitly held,[12] that effective assistance, like the right to counsel itself, derives not only from the due process clause, but from the sixth amendment's "more stringent requirements."[13] Consistent with this recognition the Court has continued to repeat that the purpose of counsel is to "preserve the adversary process"[14] and that counsel must act "in the role of an active advocate in behalf of his client."[15] In the guilty plea context, the Court has held that the accused's right to effective assistance is the right to "reasonably competent" representation.[16] And the Third,[17] Fourth,[18] and Fifth[19] Circuits have already realized that there is no reason to require less when the accused does not plead guilty.[20] Accordingly, we adopt the following standard: *a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.*[21]

10. *See also* Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281, 284–285 (1967).

11. *See, e. g.,* Wade v. United States, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

12. Scott v. United States, 138 U.S.App.D.C. 339, 427 F.2d 609, 610 (1970).

13. *See* Moore v. United States, 432 F.2d 730, 737 (3rd Cir. 1970) (*en banc*).

14. United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).

15. Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). *See also* Suggs v. United States, 129 U.S.App.D.C. 133, 391 F.2d 971 (1968).

16. McMann v. Richardson, 397 U.S. 759, 770–771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

17. Moore v. United States, 432 F.2d 730 (3rd Cir. 1970) (*en banc*) ("general requirement of normal competency"). *See also* United States ex rel. Green v. Rundle, 452 F.2d 232 (3rd Cir. 1971).

18. While not adopting a specific standard of "reasonable competence" the Fourth Circuit has set forth specific duties of counsel which suggest this level of representation. Coles v. Peyton, 389 F.2d 224, 226 (4th Cir.), cert. denied, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). *See* note 22 *infra.*

19. United States v. Hayes, 444 F.2d 472 (5th Cir.), cert. denied, 404 U.S. 882, 92 S.Ct. 210, 30 L.Ed.2d 163 (1971) ("reasonably likely to render and rendering reasonably effective assistance"). *See also* West v. Louisiana, 478 F.2d 1026, 13 Crim.L.Rep. 2226 (5th Cir. 1973).

20. *See also* In re Saunders, 2 Cal.3d 1033, 88 Cal.Rptr. 633, 472 P.2d 921 (1970) (*en banc*).

21. There is reason to believe that defendants are not now generally receiving this level of assistance. *See, e. g.,* Matthews v. United States, 145 U.S.App.D.C. 323, 449 F.2d 985 (1971); United States v. Hammonds, 138 U.S.App.D.C. 166, 425 F.2d 597 (1970). *See generally,* Bazelon, The Defective Assistance of Counsel, 42 U.Cinn.L.Rev. 1 (1973); materials cited in *id.* at 8 n. 29; Tamm, Advocacy Can Be Taught—The N.I.T.A. Way, 59 A.B.A.J. 625 (June, 1973).

It is important to stress that the issue in ineffectiveness cases is not a lawyer's culpability, but rather his client's constitutional rights. *Compare* Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, 793 (1958), *with id.* at 795 (dissenting opinion). Even the best attorney may render ineffective assistance, often for reasons totally extraneous to his or her ability. *See* United States v. Price, 141 U.S.App.D.C. 149, 436 F.2d 303, 304–305 (1970) (Bazelon, C. J., dissenting); Heard v. United States, 121 U.S.App.D.C. 37,

■ Since "reasonably competent assistance" is only a shorthand label, and not subject to ready application, we follow the approach adopted by the Fourth Circuit [22] and set forth some of the duties owed by counsel to a client:[23]

*In General*—Counsel should be guided by the American Bar Association Standards for the Defense Function.[24] They represent the legal profession's own articulation of guidelines for the defense of criminal cases.[25]

*Specifically*—(1) Counsel should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable.[26] Counsel should discuss fully potential strategies and tactical choices with his client.

(2) Counsel should promptly advise his client of his rights and take all actions necessary to preserve them. Many rights can only be protected by prompt legal action. The Supreme Court has, for example, recognized the attorney's role in protecting the client's privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), and rights at a line-up, United States v. Wade, 388 U.S. 218, 227 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967).[27] Counsel should also be concerned with the accused's right to be released from custody pending trial,[28] and be prepared, where appropriate, to make motions for a pre-trial psychiatric examination [29] or for the suppression of evidence.[30]

348 F.2d 43, 51 (1965) (separate opinion of Bazelon, C. J.).

22. Coles v. Peyton, 389 F.2d 224, 226 (4th Cir.), cert. denied, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968) :
Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. *See also* State v. Harper, 57 Wis.2d 543, 205 N.W.2d 1 (1973) (ABA Standards for the Defense Function adopted as "partial guidelines for the determination of effective representation.").

23. The duties articulated herein are meant as a starting point for the court to develop, on a case by case basis, clearer guidelines for courts and for lawyers as to the meaning of effective assistance. *See, e. g.,* United States v. Martin, 155 U.S.App.D.C. 359, 475 F.2d 943, 952–956 (1973) (dissenting opinion of Chief Judge Bazelon suggesting that ineffectiveness of counsel at sentencing, defined by reference to the ABA Standards, should be remedied by a remand for resentencing) ; *cf.* United States v. Johnson, 156 U.S.App.D.C. 28, 475 F.2d 1297 (1973) (ineffectiveness at sentencing).

24. American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Defense Function (App. Draft 1971). These standards are the product of a comprehensive study by a distinguished committee chaired by the Chief Justice of the United States, and have been approved by the ABA's House of Delegates.

25. While the Standards claim that they are not intended "as criteria for judicial evaluation of effectiveness," *id.* at § 1.1(f), they are certainly relevant guideposts in this largely uncharted area.

26. People v. Shells, 4 Cal.3d 626, 94 Cal. Rptr. 275, 483 P.2d 1227 (1971) ; *cf.* Hawk v. Olsen, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945).

27. *See* Amsterdam, Segal & Miller, Trial Manual for The Defense of Criminal Cases §§ 35–37 (1967) ; *cf.* Marshall v. United States, 141 U.S.App.D.C. 1, 436 F.2d 155 (1970).

28. *See generally,* ABA Standards, Pretrial Release (App. Draft 1968).

29. United States v. Morgan, 157 U.S.App.D.C. —, 482 F.2d 786 (1973) ; In re Saunders, 2 Cal.2d 1033, 88 Cal.Rptr. 633, 472 P.2d 921 (1970) (*en banc*) ; Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967) ; People v. Bennett, 29 N.Y.2d 462, 329 N.Y.S.2d 801, 280 N.E.2d 637 (1972).

30. *See, e. g.,* Government of Canal Zone v. C., 479 F.2d 1253 (5th Cir. 1973) ; People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963).

(3) Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof.[31] This means that in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities.[32] And, of course, the duty to investigate also requires adequate legal research.[33]

■ If a defendant shows a substantial violation of any of these requirements he has been denied effective representation unless the government, "on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby." Coles v. Peyton, 389 F.2d 224, 226 (4th Cir. 1968).[34] Two factors justify this requirement. First, in our constitutionally prescribed adversary system the burden is on the government to prove guilt. A requirement that the defendant show prejudice, on the other hand, shifts

the burden to him and makes him establish the likelihood of his innocence. It is no answer to say that the appellant has already had a trial in which the government was put to its proof because the heart of his complaint is that the absence of the effective assistance of counsel has deprived him of a full adversary trial.

Second, proof of prejudice may well be absent from the record precisely because counsel has been ineffective.[35] For example, when counsel fails to conduct an investigation, the record may not indicate which witnesses he could have called, or defenses he could have raised.

### V

■ Much of the evidence of counsel's ineffectiveness is frequently not reflected in the trial record (e. g., a failure to investigate the case, or to interview the defendant or a witness before trial). As a result, ineffectiveness cases have often evolved into tests of whether appellate judges can hypothesize a rational explanation for the apparent errors in the conduct of trial.[36] But neither one judge's surmise nor another's doubt can take the place of proof.[37] Thus, when a claim of ineffective assistance is contemplated, it should first be presented to the district court in a mo-

31. *See* United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), *quoting* United States v. Bennett, 409 F.2d 888 (2d Cir. 1969).
  Investigation and preparation require that counsel have adequate time. Hawk v. Olson, 326 U.S 271, 278, 66 S.Ct. 116, 90 L.Ed. 61 (1945). *See* Calloway v. Powell, 393 F.2d 886 (5th Cir. 1968) ; Townsend v. Bomar, 351 F.2d 499 (6th Cir. 1965) ; *cf.* United States v. Ash, 413 U.S. 300, 326, 93 S.Ct. 2568, 2581, 37 L.Ed.2d 619 (1973) (Brennan, J. dissenting).

32. *See* 18 U.S.C. § 3500 (1970) (Jencks Act) ; Fed.R.Crim.P. 16(c) ; *cf.* Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966) ; ABA Standards for the Defense Function § 4.1 (App.Draft 1971).

33. *See* People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963) ; In re

Williams, 1 Cal.3d 168, 81 Cal.Rptr. 784, 460 P.2d 984 (1969).

34. *See* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also* Moore v. United States, 432 F.2d 730, 737 (3rd Cir. 1970) (*en banc*) ; *cf.* United States v. Wade, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

35. *See generally* United States v. Thompson, 155 U.S.App.D.C. 347, 475 F.2d 931 (1973).

36. *Compare* United States v. Benn, 156 U.S. App.D.C. 180, 476 F.2d 1127, 1133–1136 (1972) (opinion of Chief Judge Bazelon), *with id.* at 1136–1137 (opinion of Judge Wilkey). *See* Plummer v. United States, 104 U.S.App.D.C. 211, 260 F.2d 729 (1958).

37. United Staes ex rel. Kent v. Maroney, 435 F.2d 1020 (3d Cir. 1970).

tion for a new trial.[38]  In such proceeding, evidence *dehors* the record may be submitted by affidavit,[39] and when necessary the district judge may order a hearing or otherwise allow counsel to respond.[40]  If the trial court is willing to grant the motion, this court will remand.[41]  If the motion is denied, the appeal therefrom will be consolidated with the appeal from the conviction and sentence.  The record of any hearing held on the motion, and any documents submitted below, will become part of the record on appeal.

Record remanded.

MacKINNON, Circuit Judge, concurring in part and dissenting in part:

I concur generally in the standards outlined in Judge Bazelon's opinion for dealing with cases where inadequate assistance of counsel may be claimed; however, it does not appear to me that this is such a case.  An analysis of the points stated in the majority opinion include material that is irrelevant to the conviction, inconclusive, self-contradictory and unpersuasive.

In addition, I do not concur in the conclusion that the burden in such cases to prove non-prejudice shifts to the Government.  Such proof is usually more within the ability of the accused, if such evidence exists at all, and it would place an unfair burden on the Government to impose that task upon it.  For instance, the accused could frustrate the Government's effort in many instances merely by claiming his privilege against disclosing some facts on the ground that they might incriminate him.

Also the usual statement of "ineffective" assistance of counsel seems to me to imply a false standard that a counsel must be effective.  That is a hard task for defense counsel in a criminal case.  I believe the proper requirement is that he be "adequate" to the task.  Hence I would use the phrase "inadequate assistance of counsel."  I thus dissent to the above extent.

---

38.  Fed.R.Crim.P. 33;  United States v. Brown, 156 U.S.App.D.C. 177, 476 F.2d 933 (1973) ;  United States v. Thompson, 155 U.S.App.D.C. 347, 475 F.2d 931 (1973). *See* United States v. Smallwood, 154 U.S.App.D.C. 387, 473 F. 2d 98 (1972) (Bazelon, Chief Judge, concurring) ;  Marshall v. United States, 141 U.S. App.D.C. 1, 436 F.2d 155, 159 n. 11 (1970).

39.  United States v. Thompson, 155 U.S.App. D.C. 347, 475 F.2d 931 (1973).

40.  *See* ABA Standards for the Defense Function § 8.6(c) (App.Draft 1971).  The trial judge might, for example, ask the trial attorney to submit an affidavit in response to the petitioner's allegations before deciding whether a hearing is indicated.

41.  United States v. Benn, 156 U.S.App.D.C. 180, 476 F.2d 1127, 1135 (1972) ;  Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349, 350 (1952).