IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 28, 2003

## DAVID JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Claiborne County**
**No. 11092     James E. Beckner, Judge by Designation**

_____

**No. E2003-00042-CCA-R3-PC**
**December 1, 2003**
_____

The petitioner, David Jones, appeals the Claiborne County Criminal Court's denial of his petition for post-conviction relief from his convictions for attempted second degree murder and two counts of aggravated assault and resulting effective sentence of fifteen years. He claims that he received the ineffective assistance of counsel because his trial attorney failed to request a mental evaluation for him and that his guilty pleas were not knowingly, intelligently and voluntarily entered. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Martha J. Yoakum, District Public Defender, and Daniel H. Korth, Assistant Public Defender, for the appellant, David Jones.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William Paul Phillips, District Attorney General; and Jared R. Effler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to crimes the petitioner committed against his father-in-law, mother-in-law, and wife on June 29, 1997. The record reflects that the petitioner pled guilty to attempted second degree murder, a Class B felony, and two counts of aggravated assault, a Class C felony, and that the trial court sentenced him as a Range I, standard offender to ten years for the attempted murder conviction and five years for each aggravated assault conviction. The five-year sentences were to be served concurrently to each other but consecutively to the ten-year sentence. On November 13, 1998, the petitioner filed a petition for post-conviction relief.

At the evidentiary hearing, the petitioner testified that his trial attorney had represented him in other matters and was retained to represent him in this case. He said that he had been in four mental institutions and that he last was in a mental hospital in 1996 after he tried to commit suicide. He said that he did not remember talking to his attorney about his mental condition and that he was taking prescribed antipsychotic or antidepressant medication when he entered his guilty pleas. He said that he told his attorney he was taking the medication and that his attorney told him not to tell the trial court about it. He acknowledged that the trial court asked him at the hearing if he was taking any medication and that he told the trial court no. He also acknowledged signing a plea agreement form and telling the trial court at the guilty plea hearing that he understood the form.

On cross-examination, the petitioner testified that he told his attorney he wanted a mental evaluation but that he never received one. He said that he had been receiving psychiatric treatment while in prison, that he saw a psychiatrist every few months, and that he currently was taking Paxil. He said he did not know if he had received a psychiatric evaluation while in prison. He acknowledged that he had been charged with one count of attempted second degree murder, three counts of especially aggravated kidnapping, and one count of unlawful possession of a weapon and that he and his attorney discussed possible punishments for those crimes. He said that when the trial court asked him if he had any questions at the guilty plea hearing, he said no because his attorney told him to lie. He said his attorney told him that he would not serve more than three years in confinement if he pled guilty. He said he had prior convictions for aggravated assault, vandalism, and driving under the influence.

The petitioner's trial attorney testified that he had represented the petitioner in cases involving a land transaction and a divorce before representing the petitioner in this case. He said he knew about the petitioner's mental problems, that the petitioner had tried to commit suicide, and that the petitioner had spent time in a mental hospital. He said that he also knew about the petitioner's other hospitalizations and that the petitioner was taking medication at the time of the guilty plea hearing. He said that in his regular course of practice, he discussed mental evaluations with his clients. He said, though, that after the petitioner's preliminary hearing, the state made a plea offer before they "got to that point." He said that the petitioner was intelligent, that he did not have any problems talking with the petitioner, and that he believed the petitioner understood the plea agreement. He denied telling the petitioner to lie to the trial court at the guilty plea hearing.

On cross-examination, the petitioner's attorney testified that he had been practicing law for twenty-one years and had handled hundreds of criminal cases. He said that he cross-examined the state's witnesses at the preliminary hearing, that he filed a discovery request, that the state gave him discovery, that he talked with police officers involved in the case, and that he met with the petitioner several times in jail. He said his investigation of the case revealed that the petitioner shot the petitioner's father-in-law and committed crimes against the petitioner's mother-in-law and wife. He said that the victims were well-respected in the community and that it would have been difficult to get an acquittal. He said he also believed the petitioner would have been impeached with prior convictions if he had testified at a trial. He said he discussed the plea agreement with the petitioner and advised him to accept the state's fifteen-year offer. He said that the petitioner asked questions

about the plea agreement form, that he answered the petitioner's questions, and that the petitioner appeared to understand the agreement. He said he discussed parole eligibility with the petitioner and told him that there was no guarantee the petitioner would be released after serving only thirty percent of his sentence. He said that he had no reason to doubt that the petitioner was competent and that the petitioner understood what was happening at the guilty plea hearing. He said that although the petitioner was taking medication at the time of the hearing, the petitioner told him and the trial court that the medicine did not prevent the petitioner from understanding the hearing. He acknowledged that it was possible the medicine could have prevented the petitioner from understanding the guilty plea hearing.

The trial court accredited the trial attorney, who testified that the petitioner appeared to understand the guilty plea hearing, and determined that the guilty plea hearing transcript supported the attorney's testimony. The trial court stated that if the petitioner had gone to trial, his attorney would have more than likely had the petitioner evaluated. The trial court noted that the petitioner did not tell the trial court at the guilty plea hearing that the petitioner suffered from any mental problems and found that the petitioner was motivated to plead guilty by receiving a fifteen-year sentence. The trial court ruled that the petitioner entered his guilty pleas knowingly, intelligently, and voluntarily and that the petitioner had not received the ineffective assistance of counsel.

The petitioner contends that he received the ineffective assistance of counsel because his trial attorney failed to request a mental evaluation for him. In addition, he claims that his attorney's performance "worked to produce a plea hearing setting that was fundamentally unfair." The state argues that the petitioner has failed to show that his attorney was ineffective for failing to request a mental evaluation because he presented no mental health experts at the evidentiary hearing. The state also argues that the record supports the trial court's determination that the petitioner entered his guilty pleas knowingly, intelligently, and voluntarily. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

As to the petitioner's claim that he received the ineffective assistance of counsel because his trial attorney failed to request a mental evaluation for him, the trial court accredited the attorney's testimony that the petitioner was intelligent and appeared to understand the guilty plea agreement. Moreover, although the petitioner testified that he had a history of mental illness, no mental health experts testified at the hearing. We conclude that he has failed to demonstrate that his attorney was ineffective for failing to request a mental evaluation. As to the petitioner's claim that the guilty plea hearing was "fundamentally unfair," we interpret the petitioner's argument to be that he did not knowingly, intelligently, and voluntarily enter his guilty pleas. However, as noted by the trial court, the guilty plea hearing transcript shows otherwise. At the hearing, the trial court questioned the petitioner extensively and the petitioner answered yes and no at the appropriate times. Moreover, the trial court asked the petitioner if he was under the influence of any substance that would interfere with his being able to understand the hearing, and the petitioner said, "No, sir." The trial court accredited the petitioner's attorney, who testified that he believed the petitioner understood what was happening at the guilty plea hearing. We conclude that the petitioner has failed to show that he received the ineffective assistance of counsel.

Based on the foregoing and the record as a whole, we affirm the trial court's denial of the petition for post-conviction relief.

_____
JOSEPH M. TIPTON, JUDGE

-4-